**In re Simon ROSIN, Debtor.**

**Lauren P. Johnson Greene, as Chapter 7 Trustee for the Estate of Simon Rosin, Plaintiff,**

v.

**Robert P. Rosin, Alexander P. Rosin, and Michael Rosin, Defendants.**

**Bankruptcy No. 93–9697–8G7. Adversary No. 95–597.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 4, 1998.

Thomas H. McLain, Jr., St. Petersburg, FL, for plaintiff.

Scott Rosin, Tampa, FL, for defendant, Alexander Rosin.

W. Penn Dawson, Tampa, FL, for defendant, Robert P. Rosin.

Alberto F. Gomez, Tampa, FL, for defendant, Michael Rosin.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Plaintiff's Motion for Summary Judgment filed by Lauren P. Johnson Greene, as Chapter 7 Trustee; the Motion for Summary Judgment filed by the Defendant, Robert P. Rosin; the Motion for Summary Judgment filed by the Defendant, Alexander P. Rosin; and the Motion for Summary Judgment filed by the Defendant, Michael Rosin. The Defendants, Robert Rosin, Alexander Rosin, and Michael Rosin, are brothers of the Debtor, Simon Rosin.

Each of the Motions relates to a Complaint to Avoid Transfers and for Declaratory Relief filed by Lauren P. Johnson Greene (the Trustee), as Chapter 7 Trustee for the estate of Simon Rosin. Essentially, the Trustee asserts that the Debtor transferred his interest in certain property to the Defendants prior to the filing of his bankruptcy petition, and that such transfers are voidable or ineffective as against the Trustee.

The Complaint contains ten counts. In Count I, the Trustee seeks to avoid a transfer from the Debtor to Michael Rosin pursuant to § 547 of the Bankruptcy Code. In Counts II, III, and IV, the Trustee seeks to avoid the transfers to Michael, Robert, and Alexander, respectively, pursuant to § 544 of the Bankruptcy Code and Florida Statute § 695.01(1). In Counts V, VI, and VII, the Trustee seeks a declaratory judgment that Quitclaim Deeds executed by the Debtor in favor of Robert, Alexander, and Michael, respectively, were ineffective to transfer the Debtor's expectancy interest in property owned by his mother at the time that the documents were executed. In Counts VIII, IX, and X, the Trustee seeks a declaratory judgment that, even if the instruments executed by the Debtor did transfer an interest in property, such transfers were ineffective as against the Trustee.

Generally, the Defendants assert that the transfers are not voidable because the Defendants paid the Debtor money in consideration for the transfers, with the result that the transfers represent contemporaneous exchanges for value. Additionally, the Defendants assert that filing the transfer documents in the public records was not required to perfect the transfers, because the written assignments signed by the Debtor were automatically perfected at the time that they were executed pursuant to Florida Statute § 679.302(1)(c). Consequently, the Defendants contend that the Trustee may not avoid the transfers pursuant to § 544 of the Bankruptcy Code.

The Trustee does not attempt to avoid the transfers as they relate to personal property bequeathed by Elsie Rosin to the Debtor, but only as they relate to the real property.

All of the parties assert that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law.

### Background

Elsie P. Rosin was the mother of the Debtor and the Defendants. Prior to her death in 1992, Mrs. Rosin owned in excess of 335 acres in DeSoto County, Florida.

On May 28, 1986, the Debtor executed an instrument entitled Quit Claim Deed to Michael A. Rosin. The instrument states that the Debtor quitclaims to Michael Rosin all of his right, title, and interest in "any real estate that I own now or may own in the future in DeSoto County, Florida." The instrument further provides that the Debtor assigned and transferred to Michael Rosin all right, title, and interest that he may have in "any real or personal property together with any inheritance that he might receive from Elsie P. Rosin." Finally, the instrument provides that the "consideration hereof is to secure repayment of that certain note dated May 28, 1986 from Grantor to Grantee in the amount of $33,000."

On October 30, 1989, the Debtor executed an Assignment of Interest, Legacy and/or Expectancy in Estate. This Assignment provides that the Debtor sells, assigns, and transfers to Robert P. Rosin "one-half of all my claim and expectancy which I may inherit, acquire or which may or shall come into my possession and ownership as an heir at law of Elsie P. Rosin and/or a devisee or otherwise in the Last Will and Testament of Elsie P. Rosin ... in and to that certain parcel of real property" in DeSoto County, Florida, as legally described in the Assignment. In the Affidavit of Robert P. Rosin filed in this case, Robert Rosin states that this assignment "was in exchange for $75,000.00" and that he actually paid the Debtor the sum of $75,000.00.

Also on October 30, 1989, the Debtor executed an Assignment of Interest, Legacy and/or Expectancy in Estate to Alexander P. Rosin. This Assignment is identical in form to the Assignment to Robert Rosin, and assigns to Alexander Rosin one-half of the Debtor's expectancy in the real property that the Debtor may acquire as an heir of Elsie P. Rosin. In the Affidavit of Alexander Rosin filed in this case, Alexander Rosin states that he "paid $75,000 cash to or on behalf of Simon Rosin in exchange for said assignment and quit claim deed."

On December 15, 1989, the Debtor executed a Quitclaim Deed to Alexander Rosin. In this Quitclaim Deed, the Debtor quitclaimed to Alexander Rosin all of the Debtor's right, title, and interest in certain DeSoto County real property as legally described in the document. This Quitclaim Deed was recorded in the public records of DeSoto County, Florida on January 12, 1990.

On December 22, 1989, the Debtor executed a Quitclaim Deed to Robert Rosin. This Quitclaim Deed is similar in form to the Quitclaim executed in favor of Alexander Rosin a week earlier, and quitclaims to Robert Rosin all of the Debtor's interest in real property located in DeSoto County.

The legal description of the property in the Quitclaim to Robert Rosin appears to include an additional parcel not included in the Quitclaim to Alexander Rosin. The Quitclaim Deed to Robert Rosin was recorded in the public records of DeSoto County on April 16, 1990.

Elsie P. Rosin died on October 10, 1992, and her Last Will and Testament was admitted to probate on October 26, 1992.

The Quit Claim Deed executed by the Debtor to Michael Rosin on May 28, 1986, was recorded in the public records of DeSoto County on March 8, 1993.

The Debtor filed a petition under chapter 11 of the Bankruptcy Code on September 13, 1993. The case subsequently was converted to a case under chapter 7.

On October 29, 1996, the Circuit Court for Sarasota County, Florida entered an Amended Final Judgment in the probate case of the estate of Elsie P. Rosin. The probate case had continued in the Circuit Court pursuant to authorization from this Court. The Amended Final Judgment contains the following findings:

1. Certain real property located in DeSoto County (described on Exhibit A to the Amended Final Judgment) was devised by Elsie Rosin to Michael Rosin, Simon Rosin, and Alexander Rosin in equal shares. Simon Rosin divested himself of his expectancy in the property by various instruments and no longer has an interest in the property. By stipulation, title to the described property is vested in Alexander Rosin and Michael Rosin in undivided equal shares.

2. Certain other real property located in DeSoto County (described on Exhibit B to the Amended Final Judgment) is part of the residue of Elsie Rosin's estate and was devised to Michael Rosin, Simon Rosin, Robert Rosin, and Alexander Rosin in equal shares. Simon Rosin divested himself of his expectancy, and title to this property is now held by Michael Rosin (1/2 interest), Alexander

Rosin (1/4 interest), and Robert Rosin (1/4 interest).

3. The Amended Final Judgment does not eliminate any rights of the Trustee in the bankruptcy proceedings, and is expressly subject to the Bankruptcy Court's determination of the parties' respective property interests.

## Instruments

The instruments which are the basis for the challenges by the Trustee in this case are summarized as follows:

| Date | Instrument |
| --- | --- |
| May 28, 1986 | Quit Claim Deed to Michael Rosin Recorded—March 8, 1993 |
| October 30, 1989 | Assignment to Robert Rosin |
| October 30, 1989 | Assignment to Alexander Rosin |
| December 15, 1989 | Quitclaim Deed to Alexander Rosin Recorded—January 12, 1990 |
| December 22, 1989 | Quitclaim Deed to Robert Rosin Recorded—April 16, 1990 |

The Debtor executed two separate instruments (an assignment and a quitclaim deed) in favor of Robert Rosin, and two separate instruments (an assignment and a quitclaim deed) in favor of Alexander Rosin. By their terms, these instruments relate only to certain real property located in DeSoto County. The Debtor executed only one instrument (entitled Quit Claim Deed) in favor of Michael Rosin, and this instrument refers to the Debtor's interest in both real property and personal property.

The Trustee asserts, generally, that the quitclaim deeds did not transfer any interest in property, that the assignments are voidable pursuant to Section 544 of the Bankruptcy Code and Florida Statute § 695.01(1) because they were not recorded in the public records of DeSoto County, and that any transfer by the quitclaim deed to Michael Rosin is avoidable because the deed was recorded within one year prior to the filing of the Debtor's bankruptcy petition. The Trustee contends that an expectancy interest in a future probate estate is not transferrable by quitclaim deed as a matter of law, and that any such transfers, whether by quitclaim or assignment, were ineffectual as against the Trustee.

The Defendants generally assert that the transfers represent contemporaneous exchanges for new value, were made in the ordinary course of business, and were made more than one year prior to the filing of the Debtor's bankruptcy petition. Additionally, the Defendants assert that the Assignments of Interest, Legacy and/or Expectancy in Estate were valid and automatically perfected as of the date of execution pursuant to Florida Statute § 679.302(1)(c).

Section 544 of the Bankruptcy Code provides:

### § 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Chapter 695 of the Florida Statutes is entitled "Record of Conveyances of Real Estate." Section 695.01(1), as contained in Chapter 695 and cited by the Trustee, provides:

695.01 Conveyances to be recorded.—

(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effec-

tual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law.

Since the Assignments were not recorded pursuant to Florida Statute § 695.01(1), the Trustee contends that they are voidable pursuant to § 544(a)(3) of the Bankruptcy Code.

The Trustee also asserts that the transfers evidenced by the Quitclaim Deeds were ineffective from their inception. The Trustee cites *Van Pelt v. Clarke*, 476 So.2d 746 (Fla. 1st DCA 1985) to support her claim that the quitclaim deeds executed by the Debtor were ineffective to convey the Debtor's interest in the DeSoto County real property, because that interest did not exist at the time that the quitclaim deeds were executed. In *Van Pelt*, a daughter executed a quitclaim deed with respect to property then owned by her father. Upon her father's death, the daughter learned that his will contained no devise of the property, and ownership of the property was determined by a statute which provided for her father's surviving spouse to receive a life estate, and her father's lineal descendants (including the daughter) to receive the vested remainder. The District Court of Appeal held:

> ... At the time the quitclaim deed was executed, Van Pelt held absolutely no interest in the property and, therefore, the quitclaim deed could have in no way effectively conveyed the interest she acquired upon her father's death.

> While it is true a quitclaim deed may be used to transfer an inchoate or incomplete interest, that interest must be in existence at the time the deed is executed.

Consequently, the Trustee contends that the quitclaim deeds at issue in this case did not convey any interest in real property to the Defendants because the Debtor had not acquired any interest in the property at the time that the quitclaims were executed. The Trustee claims that Florida Statute § 732.514 provides further support for this contention:

**732.514 Vesting of devises.** The death of the testator is the event that vests the right to devises unless the testator in his will has provided that some other event must happen before a devise shall vest.

This section is contained in the chapter of the Florida Statutes entitled "Probate Code: Intestate Succession and Wills." Since the Debtor's mother was not deceased at the time that the conveyance documents were executed, the Trustee claims that the Debtor had no vested interest to transfer.

Finally, the Trustee contends that the Quitclaim Deed executed in favor of Michael Rosin is voidable as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code. Section 547(b) provides:

**§ 547. Preferences**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Quit Claim Deed to Michael Rosin was executed on May 28, 1986, but was not recorded until March 8, 1993. The Trustee contends that the recordation of the Deed on March 8, 1993, constituted a transfer of the Debtor's interest in the property, that Michael Rosin is an "insider" with respect to the Debtor, and that the transfer occurred within one year prior to the filing of the Debtor's bankruptcy petition on September 13, 1993. Consequently, the Trustee asserts that the transfer is voidable pursuant to Section 547(b).

The Defendants assert that the transfers were effective, contemporaneous exchanges for new value made in the ordinary course of the Debtor's financial affairs. The Defendants also contend that their interest in the property is superior to that of the Trustee by virtue of Florida Statute § 679.302(1)(c). Chapter 679 of the Florida Statutes is entitled "Uniform Commercial Code: Secured Transactions." Section 679.102 sets forth the scope of Chapter 679:

**679.102 Policy and subject matter of chapter.**

(1) Except as otherwise provided in s. 679.104 on excluded transactions, this chapter applies:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts; and also

(b) To any sale of accounts or chattel paper.

Section 679.104 provides in part:

**679.104 Transactions excluded from chapter.**

This chapter does not apply:

.        .        .        .        .

(10) Except to the extent that provision is made for fixtures in s. 679.313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder.

Section 679.302, as cited by the Defendants in this case, provides in part:

**679.302 When filing is required to perfect security interest; security interests to which filing provisions of this chapter do not apply.**

(1) A financing statement must be filed to perfect all security interests except the following:

.        .        .        .        .

(c) A security interest created by an assignment of a beneficial interest in a decedent's estate.

The Defendants contend, therefore, that the interest transferred by the Debtor pursuant to the assignments is governed by Chapter 679 of the Florida Statutes, and is a "beneficial interest in a decedent's estate" within the meaning of Florida Statute § 679.302. Specifically, the Defendants rely on *In re Cowsert*, 14 B.R. 335 (Bankr. S.D.Fla.1981) for the proposition that a beneficial interest such as an expectancy is a "general intangible" subject to chapter 679 of the Florida Statutes.

## Principles

**I. An "expectancy," or a possibility that an apparent heir will inherit property from an ancestor, is not an interest in property in Florida.**

■  The property interests recognized in Florida are identified and described in Chapter 13 of LESLIE A. JEFFRIES, REDFEARN WILLS AND ADMINISTRATION IN FLORIDA § 13–1 (6th ed.1986). "By estate is meant the quantity of interest which an owner has in property, whether real or personal." The recognized estates are generally described, and the divisions, limitations, and qualifications of estates, including estates in possession and estates in expectancy, are defined and described in the treatise. See also 22 Fla.

Jur.2d, *Estates, Powers, and Restraints* §§ 1–4.

The possibility that an apparent heir or devisee will receive property by descent or devise from an ancestor does not constitute an estate recognized in Florida. A descendant has no present or future interest in property owned by an ancestor, absent some conveyance. Generally, future interests follow limited or qualified present estates, and even estates on condition and executory estates follow limited or qualified present estates. Although there is a possibility that a descendant may inherit property from an ancestor, it is only a possibility. This possibility has some similarities to an executory interest, but "[a]n executory interest is to be distinguished from a 'mere possibility,' such as the expectancy of an heir apparent." 28 Am.Jur.2d *Estates* § 337.

The California Supreme Court has stated a precaution with reference to California law which is also applicable in Florida:

> In using the term 'expectancy' in real property law, however, a careful distinction must be made between those instances where it is used in relation to 'expectant estates' or future interests [citation omitted] and those in which it is used to refer to a 'mere possibility, such as the expectancy of an heir apparent.'

*Silva, et al. v. Lucas, et al. (In re Estate of Ferry)*, 55 Cal.2d 776, 13 Cal.Rptr. 180, 361 P.2d 900 (Cal.1961) (in banc). In California, a statute provides that an apparent heir has no interest in the property of his or her parent.[1] While there is no similar statutory provision in Florida, cases confirm that an apparent heir has "absolutely no interest in the property" of his or her parent. *Van Pelt v. Estate of Clarke*, 476 So.2d 746, 747 (Fla. 1st DCA 1985).

## II. An expectancy can be assigned in Florida.

At common law, an heir's expectancy that he would succeed to an ancestor's estate could not be assigned. The expectancy was regarded as a mere possibility rather than an existing interest, and its assignment was disfavored for public policy reasons aimed at protecting both the heir and the ancestor. 6 Am.Jur.2d *Assignments* § 55. In some circumstances, a grantor of title with warranties was held to be estopped to claim a title later acquired by inheritance. The assignment or conveyance of an estate later inherited was also enforceable if confirmed or ratified after the death of the ancestor. 6 Am. Jur.2d *Assignments* § 55.

Courts of equity, however, have generally upheld assignments of expectancies by prospective heirs. Although such an assignment may be closely scrutinized, it is enforceable in equity, provided the assignment was fairly obtained and based on sufficient consideration. 6 Am.Jur.2d *Assignments* § 58. Further, where one heir of a living ancestor transfers his interest to another heir, the assignment is enforceable in equity, if entered fairly and supported by adequate consideration. 6 Am. Jur.2d *Assignments* § 65. See, for example, *Sgambelluri v. Nelson*, 480 F.2d 619 (9th Cir.1973).

Courts of equity are not uniform as to the theory upon which the enforcement of such an assignment is based.

> The courts which recognize the general rule that equity may enforce the assignment of an expectancy are not entirely agreed as to the theory upon which the enforcement of such an assignment is based. It has been frequently declared that such an assignment is enforced in equity, not as a grant of a present right or interest, but rather as an executory contract to convey, which will be specifically enforced when the property is acquired. Other courts assert that the assignee of an expectancy has something more than a mere right in contract, that he has

---

1. Cal.Civ.Code, § 700. Future interests; possibilities. A mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any kind.

something in the nature of an estate or interest, and that the assignment creates an equitable charge which arises immediately upon the property coming into existence; and some courts proceed upon the theory of estoppel in pais.

6 Am.Jur.2d *Assignments* § 58. Further, There appears to be a tendency on the part of courts with both legal and equitable jurisdiction to fail to distinguish between the doctrines of legal estoppel and the equitable doctrine recognizing the validity of assignments of expectancies.

6 Am.Jur.2d *Assignments* § 57.

In Florida, an expectancy may be assigned, and the possibility of inheriting property from an ancestor may be assigned. Courts have looked to the Florida Supreme Court's decision in *Richardson v. Holman*, 160 Fla. 65, 33 So.2d 641 (1948), as the statement of Florida's policy on the assignment of uncertain interests. Confirming the assignability of a possibility of reverter, the court stated:

> In fine, the right of contract so rigidly canalized by the common law, has, by the constitution and statutes, been liberalized till at the present any citizen who is sui juris may enter into any contract that is not illegal, fraudulent, immoral or contrary to public policy. Under the common law a right of action, choses in action, future or contingent interests, *possible and existing estates or interests, were not assignable, but all of these are now assignable by statute or in equity.*

*Richardson*, 33 So.2d at 644 (emphasis supplied).

Approximately two years after Florida's Supreme Court stated in *Richardson, supra*, that uncertain future interests are assignable, it decided *In re Ruch's Estate*, 48 So.2d 289 (Fla.1950). The facts in *Ruch's Estate* are only briefly described, but it appears that a possible beneficiary of an estate had, in consideration of an amount paid to him, executed an agreement by which he "released and relinquished" to a third party all of his interest in a testator's estate, and also had executed a quitclaim deed by which he conveyed to the third party all the interest which he may have had in certain real property which was owned by the testator. The Supreme Court affirmed the denial of the heir's request for distribution of the property from the testator's estate, because prior to the testator's death the heir had, for valuable consideration, released and relinquished all of his right, title and interest in the estate. The Court did not base its holding on the conveyance by the quitclaim deed, but based its conclusion on the "contract of release and relinquishment." *In re Ruch's Estate*, 48 So.2d at 290.

Florida Courts of Appeal have also upheld assignments of uncertain future interests. See, for example, *Fort Lauderdale & Southern Development Corp. v. Beach Boys Plaza, Inc.*, 539 So.2d 560, 561 (Fla. 4th DCA 1989) ("The written assignment ... was a valid transfer of an uncertain future interest in property, properly executed by the parties for valuable consideration, delivered and accepted.") and *Giles v. Sun Bank, N.A.*, 450 So.2d 258, 260 (Fla. 5th DCA 1984) (An assignment is effective to operate as a transfer of a right or chose in action as long as the parties' intention is clear and consideration was provided.) See also 4 Fla.Jur.2d *Assignments* § 5.

## III. A quitclaim deed, without more, is not effective to convey an expectancy.

Generally, a quitclaim deed conveys only such interest as the grantor possessed at the time that the deed was executed, and the grantor does not affirm or warrant that he has any particular interest or estate in the property subject to the deed. 23 Am.Jur.2d *Deeds* § 352.

> A quitclaim deed operates as a transfer of any right that the grantor may have, either at law or in equity; and where, at the time of the quitclaim, the

grantor has a title or interest, whether particularly designated in the deed or not, which, though inchoate and incomplete as a legal title or interest, is nevertheless of such a character as to pass to the grantee under the granting clause, the subsequent confirmation or completion of that title or interest will inure to the benefit of the grantee....

Although a future interest, if vested, will pass by a quitclaim deed, the grantor is not estopped, if it was merely contingent at the time of the quitclaim deed, to assert the title which later vests unless the quitclaim purports to release all future, contingent, and possible interests or covenants to warrant and defend the premises.

23 Am.Jur.2d *Deeds*, § 353.

The Trustee cites *Van Pelt, supra,* to support her position that a quitclaim deed cannot be used to convey an expectancy. The Trustee relies on the court's statement in *Van Pelt* that the grantor in that case had no interest in the property at the time that the quitclaim deed was executed, and therefore had no interest to convey. *Van Pelt,* 476 So.2d at 747. It appears from *Van Pelt* that a quitclaim deed, without more, does not convey an expectancy. Specifically, the quitclaim deed in *Van Pelt* did not contain provisions clearly expressing Van Pelt's intent to assign or convey any expectancy or any interest which Van Pelt might later inherit from her father, and the court held that the interest which she later inherited upon her father's death was not conveyed by the earlier quitclaim. It should be noted that the court further stated that "a mere quitclaim or release by deed is not an estoppel upon the releasor as to any after-acquired interest." *Van Pelt,* 476 So.2d at 747.

Accordingly, it appears that a quitclaim, without an expression of the intent to convey an expectancy, does not convey property which a person may possibly inherit in the future and does not estop the transferor from inheriting the property. Regardless of the title of the instrument,

however, it appears that an instrument may be effective to assign or to release and relinquish a possible future right to inherit property, as long as the document clearly expresses the intent to do so, is fair, and is supported by consideration.

## IV. Recording an assignment of an expectancy is not required by Fla. Stat. § 695.01.

█ Florida Statutes § 695.01 requires that a conveyance or transfer of an interest in real property must be recorded to be effective against creditors or subsequent purchasers for value and without notice.

**695.01 Conveyances to be recorded.**

(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; ....

As set forth above, an expectancy of an apparent beneficiary is not an interest in real property, and the conveyance or assignment of the expectancy conveys "absolutely no interest in the property." *Van Pelt,* 476 So.2d at 747. Such an assignment does not affect or encumber the owner's title to the property. The Florida Supreme Court discussed the recording statute in *Braddy & Hale Fishery Co. v. Thomas,* 93 Fla. 326, 112 So. 55, 56 (1927):

It cannot be questioned that this provision of the law has reference only to such a conveyance, transfer, mortgage, or 'interest' in real estate as carries with it the full title or some valuable interest therein, and has no reference whatever to void conveyances, mortgages, or transfers that in no wise affect the title or right in the real estate covered thereby.

The provisions of Fla.Stat. § 695.01 do not require that an assignment of an expectancy be recorded.

**V. In Florida, an assignee of an interest in an estate may require the personal representative of the estate to distribute the assigned interest directly to the assignee.**

■ In *Trak Microwave Corporation v. Medaris Management, Inc.*, 236 So.2d 189 (Fla. 4th DCA 1970), a Florida Court of Appeal considered the enforceability of an assignment of an uncertain future contractual interest as against the assignor. Although *Trak* dealt with an assignment of income from a possible future contract, rather than an expectancy of a possible beneficiary of an estate, the court in that case cited the Florida Supreme Court's decision in *Richardson v. Holman*, 160 Fla. 65, 33 So.2d 641 (1948), as the statement of Florida's policy on the assignment of uncertain future interests. Based on *Richardson*, the court in *Trak* concluded that the assignment at issue "is valid because it offends no statute, announced rule of public policy, or constitutional provision." *Trak*, 236 So.2d at 193. The court in *Trak* continued:

> The difficult problem is whether or not the assignment can be enforced against a third person not a party thereto, i.e., the debtor, Trak, after Trak has paid to the assignor (Ladoniczki) the funds allegedly assigned. The resolution of this issue depends upon the distinction between an assignment of a right to receive funds and a promise by the assignor to make an assignment of funds when they come into being at some unspecified time in the future under a contract not in existence at the time of the assignment.... *The Florida Supreme Court has said, "... The true test of an equitable assignment is whether the debtor [the obligor of the assigned obligation] would be justified in paying the debt to the person claiming as assignee...."*

*Id.* (Emphasis supplied.) In *Trak*, the court ultimately concluded that the assignment at issue did not create in the assignee the right to collect from debtor on the assigned obligation.

■ An assignee of an interest in an estate in Florida may require the personal representative of the estate to distribute the assigned interest directly to the assignee. *In re Francis' Estate*, 153 Fla. 360, 14 So.2d 803 (1943). "Where an assignment is recognized, the assignee is, by the assignment, vested with all the rights of the assignor, and may assert them in his own name...." *In re Francis' Estate*, 14 So.2d at 808 (quoting 3 Woerner, American Law of Administration § 563 (3d ed.)). "Where an heir or distributee assigns his interest in an unsettled estate, the effect is to divest him of his title or right and vest such title or right in the assignee, but the assignment cannot in any way effect the condition of the estate or the rights of the administrator." *In re Francis' Estate*, 14 So.2d at 808 (quoting 18 C.J. § 171, and also referring to 26 C.J.S., Descent and Distribution, § 76).

This conclusion is consistent with the Florida Probate Code, which provides that competent interested persons may alter the interests to which they are entitled under a will or under the laws of intestacy. (Fla.Stat. § 733.815, Private agreements among distributees.)

■ The Court concludes that an expectancy of a possible heir or devisee is assignable in Florida and enforceable in equity, provided that the assignment is fair and satisfies the court's equitable considerations, and also provided that the assignment is supported by sufficient consideration.

**VI. Property of a decedent is subject to the needs of the decedent's estate, and an instrument from the personal representative is evidence that a distributee has succeeded to estate assets.**

The death of the testator is the event

that vests the right to devises[2] or the right to intestate property.[3] The personal representative of the decedent's estate has the right to possession or control of all real and personal property except the homestead[4] for the payment of expenses of administration, taxes, claims, devises, and distribution.[5] No personal representative may be compelled to pay any devise or surrender any land to any beneficiary for 5 months[6], and until other requirements are satisfied.[7]

Under the common law, the title to real estate descended to the heir upon the death of the owner intestate, and to the devisee upon the death of the owner testate. [Footnote omitted.] This common law rule has been changed by the probate laws of Florida to the extent that the title vests as aforesaid, but the right of possession passes to the personal representative, [footnote omitted] and the realty, as well as the personalty, becomes assets in the hands of the personal representative. [Footnote omitted.] The personal representative may sell the real estate in the same manner as he may sell personal property for the payment of the debts of the deceased and other claims and charges against the estate. [Footnote omitted.]

As the personal representative has the possession of the real estate and of the personal property during the administration, the heirs, legatees, or devisees are not entitled to the possession until the assent of the personal representative has been obtained. [Footnote omitted.]

LESLIE A. JEFFRIES, REDFEARN WILLS AND ADMINISTRATION IN FLORIDA § 12–14 (6th ed.1986).

▉ An assignee of an interest in an estate in Florida is "vested with all of the rights of the assignor," and may require the personal representative of the estate to distribute the assigned interest directly to the assignee, when it is appropriate for the property to be distributed from the estate. *In re Francis' Estate,* 153 Fla. 360, 14 So.2d 803 (1943).

▉ An instrument transferring assets from a personal representative is conclusive evidence that the distributee has succeeded to the interest of the estate in the distributed assets.

**733.811 Distribution; right or title of distributee.** Proof that a distributee has received an instrument transferring assets in kind or payment in distribution or possession of specific property from a personal representative is conclusive evidence that the distributee has succeeded to the interest of the estate in the distributed assets, as against all persons interested in the estate . . .

## VII. The assignment of an expectancy is a transfer for the purposes of the Bankruptcy Code's avoidance provisions.

▉ State law defines property interests. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Florida law, an expectancy is not a property interest. *Van Pelt, supra.* However, Florida law also provides that the assignment of an expectancy is enforceable, and that where an assignment is recognized, the assignee is vested with all the rights of the assignor and may assert them in his own name. *In re Francis' Estate, supra.*

The Bankruptcy Code defines transfers for the purposes of the trustee's avoiding powers. The definition of transfer is broad, and includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting

---

2. Fla.Stat. § 732.514.

3. Fla.Stat. § 732.101(2).

4. Fla.Stat. § 733.607.

5. Fla.Stat. § 733.608.

6. Fla.Stat. § 733.801.

7. Fla.Stat. § 733.802.

with property or with an interest in property. . . ." 11 U.S.C. § 101(54). It is clear that after the death of an ancestor, the assignment of a beneficial interest in the decedent's estate is a transfer of an interest in property. *In re Brajkovic*, 151 B.R. 402 (Bankr.W.D.Tx.1993). Similarly, although an assignment of an expectancy prior to the death of an ancestor does not convey an interest in property, it is effective to transfer to the assignee any right that the assignor may ever have to inherit the property assigned, and upon the death of the ancestor or testator the assignee is vested with the interest which otherwise would have vested in the assignor. It is a mode, although certainly a conditional mode, of disposing of or parting with property or an interest in property.

The purpose of the avoidance provisions of the Bankruptcy Code is to prevent a debtor from preferring one creditor over other creditors. Treating the assignment of the expectancy as a transfer for the purpose of analyzing the Trustee's avoiding powers is consistent with this purpose.

**VIII. If the assignment of the expectancy was given as security for a debt, the Uniform Commercial Code applies and the right transferred to the assignee is a general intangible. Filing is not required to perfect a security interest in the assigned right, but the security interest is perfected when it attaches.**

■ Although the assignment of the expectancy does not transfer any real or personal property of the assignor's ancestor, the assignment transfers to the assignee the right, if any, to receive the assignor's inheritance at the death of the ancestor.

■ If the assignment is given as security for payment or performance of an obligation, Florida's Uniform Commercial Code applies [8] and the right assigned is a general intangible.[9]

A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken.[10]

A security interest attaches when it becomes enforceable against the debtor with respect to the collateral.[11] Attachment occurs as soon as all of the following events have taken place: (a) the collateral is in the possession of the secured party or the debtor has signed a security agreement; (b) value has been given; and (c) the debtor has rights in the collateral.[12]

A financing statement must be filed to perfect non-possessory security interests, with certain exceptions. One of the exceptions applies to a security interest created by an assignment of a beneficial interest in a decedent's estate.[13] No case law has developed under Fla.Stat. § 679.302(1)(c) to furnish guidance with respect to the intent and scope of the subsection. The Comments to the section state:

> A new paragraph (1)(c) exempts from filing rules security interests created by assignments of beneficial interests in trusts and estates, because these assignments are not ordinarily thought of as subject to this Article, and a filing rule might operate to defeat many assignments.

---

**8.** Florida's Uniform Commercial Code is applicable to security interests in personal property (Fla.Stat. § 679.102(1)), and to security interests created by contracts, including assignments (Fla.Stat. § 679.102(2)).

**9.** Fla.Stat. § 679.106.

**10.** Fla.Stat. § 679.303.

**11.** Fla.Stat. § 679.203(2).

**12.** Fla.Stat. § 679.203.

**13.** Fla.Stat. § 679.302(1)(c). It should be noted that while the Uniform Commercial Code excepts the assignment of a beneficial interest in a decedent's estate from the filing requirements of the UCC, it does not except these assignments from the application of the UCC entirely.

Further comment is provided in 1 Peter F. Coogan et al., *Secured Transactions under the Uniform Commercial Code* § 3.03, at n 3, (1997):

> ... [L]awyers customarily think of trust and estate assignments as belonging to the law of trusts and estates rather than personal property security law. To prevent them from being trapped by Article 9 coverage, the 1972 amendments to the Code specify that a financing statement need not be filed to perfect assignments of a beneficial interest in a trust or a decedent's estate. U.C.C. § 9–302(1)(c). They remain subject to the Article 9 rules dealing with attachment, priority and foreclosure.

■ The Court concludes that this exception applies to the assignment of an expectancy as well as to the assignment of a beneficial interest in a decedent's estate, and that filing is not required to perfect a security interest in the assignment of an expectancy.

### Application

#### I. The instruments.

On October 30, 1989, the Debtor executed two documents entitled "Assignment of Interest, Legacy and/or Expectancy in Estate" to Robert P. Rosin and to Alexander P. Rosin, respectively. Pursuant to these documents, the Debtor assigned to Robert and to Alexander the Debtor's expectancy regarding certain real property in DeSoto County which was then owned by his mother and which he might inherit from his mother.

Shortly after the assignments were executed, on December 15, 1989, and on December 22, 1989, the Debtor executed quitclaim deeds to Robert and to Alexander, respectively. The quitclaim deeds were recorded on January 12, 1990, and on November 16, 1990, respectively. The quitclaim deeds purported to convey only the interest which the Debtor had in the DeSoto County real property at the time of the deeds, and they did not contain an assignment or expression of intent to transfer any interest which the Debtor might subsequently receive from his mother.

On May 28, 1986, the Debtor executed an instrument entitled "Quit–Claim Deed" in favor of Michael A. Rosin. The instrument was recorded on March 8, 1993. By this instrument, the Debtor quit claimed to Michael all of the Debtor's interest in any real estate that he owned "now or may own in the future" in Desoto County, Florida. Additionally, in the instrument the Debtor also "assign[ed] and transfer[red] to Michael A. Rosin all claims, rights, title and interest that he may have in any real or personal property together with any inheritance that he might receive from Elsie P. Rosin." The instrument also contains the provision that "[t]he consideration hereof is to secure repayment of that certain note dated May 28, 1986 from Grantor to Grantee in the amount of $33,-000.00. This deed shall be null and void upon repayment of said note."

■ The quitclaim deeds to Robert and to Alexander did not convey any interest in property. At the time that the documents were executed, the Debtor had no interest in the property to convey, and the quitclaim deeds did not express an intent to transfer any interest that the Debtor might acquire in the future.

■ The assignments to Robert and to Alexander, however, assigned to each of them one-half of the Debtor's expectancy regarding certain real property which he might inherit from his mother. Further, the Quit Claim Deed to Michael contained both a quitclaim conveyance and an assignment of any inheritance that the Debtor might receive from his mother. There is no disagreement that these instruments were executed and delivered in exchange for substantial consideration which was paid to the Debtor at the time that the documents were executed. There is no allegation that the assignments effected by the instruments were unfair, inequitable,

or the product of overreaching, and there is no allegation that the assignments were illegal, fraudulent, immoral, or contrary to public policy.

Further, the state probate court has found that the Debtor divested himself of his interest in the property by various instruments.

The Court concludes that the Assignments to Robert and to Alexander, and the instrument entitled Quit Claim Deed to Michael, all of which contained assignments of the Debtor's expectancy with respect to property which he might inherit from his mother, were supported by consideration and were not inequitable, and are therefore enforceable assignments.

The remaining issues raised by the parties, therefore, are whether the assignments to the Defendants are voidable under § 544(a)(3) because the assignments were not recorded in the public records pursuant to Fla.Stat. § 695.01(1), and whether the assignment to Michael Rosin is voidable under § 547 because the assignment to him was not recorded until March 8, 1993.

## II. The motions for summary judgment as to all defendants; 11 U.S.C. § 544, and Fla.Stat. § 695.01.

Section 544(a)(3) of the Bankruptcy Code, on which the Trustee relies, generally provides that a trustee may avoid any transfer of property of the debtor that is voidable by a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, at the time of the commencement of the case.

■ The Trustee argues that the assignments were required to be recorded to be perfected against a bona fide purchaser pursuant to Fla.Stat § 695.01. However, as discussed above, the recordation of the

assignments is not required by Fla.Stat. § 695.01, since the assignments did not convey an interest in the property. Such a conveyance of real property or an interest in real property is a prerequisite to the applicability of § 695.01.

The Defendants argue that the assignments were automatically perfected since filing is not required by the Uniform Commercial Code. The Uniform Commercial Code is not applicable to the assignments to Robert and Alexander, however, because those assignments were not given as security for an obligation.[14] The assignment to Michael was given as security for an obligation. The security interest in the assigned right attached when the assignment was executed, since the assignment was in writing and constituted the security agreement, value was given, and at that time the Debtor was able to transfer his rights in the expectancy.

■ For the analysis of the Trustee's rights to avoid the assignments under § 544(a)(3), the Court must evaluate whether a bona fide purchaser of real property from the Debtor at the time of the commencement of the Debtor's case could avoid the assignments to the Defendants.

The rights to succeed to a decedent's property are determined in the administration of the decedent's estate, and the personal representative surrenders or distributes the property as appropriate.

At the time of the commencement of the Debtor's bankruptcy case, no instrument surrendering or distributing real property from the personal representative of the estate of Elsie Rosin had been executed to evidence that the Debtor had succeeded to any interest in estate assets. At the time of the commencement of the case, any purchaser from the Debtor of real property which had been owned by Elsie Rosin at

---

14. Florida's Uniform Commercial Code is applicable to security interests in personal property, and to security interests created by contracts, including assignments. Fla.Stat.

§ 679.102. A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. Fla.Stat. § 679.201.

her death would acquire the property subject to the administration of Elsie Rosin's estate and the proper distribution of the assets of that estate.

In fact, the Debtor had assigned his expectancy in his mother's estate prior to her death. The assignments were valid, and the state probate court determined that the Debtor had "divested himself of his expectancy in the property." Where an assignment is recognized, the assignee is, by the assignment, vested with all the rights of the assignor, and may assert them in his own name. *In re Francis' Estate*, 14 So.2d at 808. Accordingly, at the death of Elsie Rosin, the assignees were vested with the property devised to the Debtor. The Debtor could not require the personal representative to distribute the property to him. Consequently, no purchaser of such property from the Debtor at the time of the commencement of the Debtor's bankruptcy case could require the personal representative to distribute the property to such purchaser.

Accordingly, the assignments by the Debtor are not voidable under § 544(a)(3) of the Bankruptcy Code and Fla.Stat. § 695.01.

### III. The motions for summary judgment as to Michael Rosin; 11 U.S.C. § 547.

█ In Count I of the Complaint, the Trustee seeks to avoid the transfer from the Debtor to Michael Rosin pursuant to § 547 of the Bankruptcy Code because the assignment to him was not recorded until March 8, 1993.

Generally, § 547 provides that a trustee may avoid any transfer of an interest of a debtor in property that was made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) within one year before the date of the filing of the bankruptcy petition, if the creditor was an insider of the debtor, and (5) that enables the creditor to receive more that the creditor would receive if the transfer had not been made and the credi-

tor received payment of the debt under Chapter 7.

Section 547(e)(2) provides that a transfer is made at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected within 10 days. The Trustee asserts that the transfer was perfected and therefore was made when the assignment was recorded, which was within one year of the filing of the bankruptcy petition. Michael Rosin asserts that the transfer was perfected and therefore was made when the assignment was executed, and that the assignment was a contemporaneous exchange for new value.

Sections 547(e)(1)(A) and 547(e)(1)(B) define when transfers of real and of personal property are perfected.

As discussed above, the assignment of the expectancy was not a transfer of real property, and § 547(e)(1)(A) therefore does not apply to the transfer.

Section 547(e)(1)(B) provides that a transfer of property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. Prior to the death of Elsie Rosin, a judicial lien on property of the Debtor would not have attached to property of Elsie Rosin or to the Debtor's expectancy because the expectancy is not a property interest. After the death of Elsie Rosin, a judicial lien on property of the Debtor would not attach to any of Elsie Rosin's property which was devised to the Debtor because the Debtor had assigned his expectancy prior to his mother's death, any interest he assigned vested in the assignee upon his mother's death, the assignee was entitled to distribution from the decedent's estate, and the Debtor was not entitled to receive any property from his mother's estate. The assignment was effective when it was executed, regardless of when the Debtor's mother died.

For purposes of § 547, the transfer of the Debtor's expectancy to Michael was perfected and therefore was made when the assignment was executed.

The Trustee also argues that the assignment to Michael Rosin should be treated as a mortgage and that, pursuant to Fla. Stat. § 95.281, the lien of a mortgage terminates five years after the date of maturity of the obligation secured by a mortgage. Fla.Stat. § 95.281 provides:

**95.281 Limitations; instruments encumbering real property.**

(1) The lien of a mortgage or other instrument encumbering real property, herein called mortgage, ... shall terminate after the expiration of the following periods of time:

(a) If the final maturity of an obligation secured by a mortgage is ascertainable from the record of it, 5 years after the date of maturity.

. . . . .

As discussed above, the Debtor's assignment to Michael does not convey or encumber real property. Accordingly, the limitations period prescribed in Fla.Stat. § 95.281 does not apply.

The Court concludes that the assignment from the Debtor to Michael was effective when it was executed, and was perfected at the time of execution within the meaning of § 547(e)(1)(B) of the Bankruptcy Code. The Court further concludes that the assignment to Michael was intended by the Debtor and by Michael to be a contemporaneous exchange for new value given to the Debtor, and was in fact a substantially contemporaneous exchange. Accordingly, the Trustee may not avoid the assignment as a preferential transfer under § 547 of the Bankruptcy Code.

## Conclusion

For the reasons expressed above, the Court concludes that the motion for summary judgment by the Trustee as to Counts V and VI should be granted, since the quitclaim deeds from the Debtor to Robert Rosin and to Alexander Rosin did not convey any property, but should be denied in all other respects. For the same reasons, the motions for summary judgment by Robert Rosin, Alexander Rosin, and Michael Rosin should be granted.

Accordingly:

**IT IS ORDERED** that:

1. The Plaintiff's Motion for Summary Judgment filed by Lauren P. Johnson Greene, as Chapter 7 Trustee, is granted with respect to Counts V and VI, and denied with respect to all other counts.

2. The Motion for Summary Judgment filed by the Defendant, Robert P. Rosin, is granted, and a separate judgment will be entered in favor of the Defendant, Robert P. Rosin, and against the Plaintiff.

3. The Motion for Summary Judgment filed by the Defendant, Alexander P. Rosin, is granted, and a separate judgment will be entered in favor of the Defendant, Alexander P. Rosin, and against the Plaintiff.

4. The Motion for Summary Judgment filed by the Defendant, Michael Rosin, is granted, and a separate judgment will be entered in favor of the Defendant, Michael Rosin, and against the Plaintiff.