REED, Judge.
The plaintiff in this case, Trak Microwave Corporation (hereafter called “Trak”), filed a complaint for interpleader in the Circuit Court for Orange County, *190 Florida, on 8 March 1967 against Medaris Management, Inc., and Lyle H. Meyer. It alleged that the plaintiff on 19 April 1965 had purchased from Clara and Joseph La-doniczki their interest in a patentable lamp known as a self voltage selector fluorescent lamp, hereafter referred to as the “lamp”. The complaint alleged that the plaintiff produced the lamp and owed Meyer $1,301.35 in royalties by reason of an interest which he had had in the lamp. The complaint also alleged that the defendant Medaris Management, Inc., claimed the same royalties by reason of an assignment by Ladoniczki of income from his patentable inventions and ideas to the defendant Medaris Management, Inc., formerly known as Medaris, Cruger & Patterson, Inc. (hereafter called “Medaris”).
Medaris filed a counterclaim which created the issues which are the subject matter of the present appeal. In its counterclaim, Medaris alleged that on 8 January 1964 a corporation owned by Ladoniczki (Lunar Engineering, Inc.) had executed a note in the amount of $18,000.00 to Medar-is. The counterclaim also alleges that the note was indorsed by Ladoniczki and, as collateral security for the repayment of the note, Ladoniczki, by a writing at the foot of the note, assigned all income and financial benefits which he might derive from his inventions and/or patentable ideas until the note was paid. The counterclaim also alleged that Ladoniczki’s corporation was in default and owed $15,600.00 on the note. The counterclaim also alleged that on 19 April 1965 the plaintiff, Trak, had entered into an agreement with Ladoniczki by which it agreed to pay Ladoniczki royalties on three inventions, including the lamp. Under this agreement, Trak was allegedly obligated to pay Ladoniczki $.47 for each lamp manufactured by it and sold. The counterclaim alleged that at the time of the agreement between Trak and Ladoniczki, Trak was charged with the knowledge that Medaris had theretofore acquired an assignment of Ladoniczki’s income from his various inventions, including the lamp. The counterclaim stated that Trak manufactured a number of the lamps and thereby became obligated under the agreement to pay Ladoniczki $.47 per lamp. By reason of its assignment, Medaris claimed it was entitled to receive the $.47 per lamp.
The plaintiff filed a motion to dismiss and to strike Medaris’ counterclaim. They were denied and the plaintiff filed its answer to the counterclaim. The cause was tried before the court. The trial court found that when the plaintiff, Trak, bought Ladoniczki’s interest in the lamp the plaintiff was charged with knowledge of the prior assignment by Ladoniczki to Medaris of royalties to be derived from the lamp. The trial court found that the plaintiff had manufactured 14,619 lamps and owed Medaris $.47 for each lamp by reason of the assignment from Ladoniczki to Me-daris. On the basis of these findings, a judgment was awarded in favor of Medar-is on the counterclaim. The present appeal is taken from the final judgment.
None of the parties have challenged the correctness of that part of the judgment relating to the defendant Meyer and the issues relating to the Meyer claim are not pertinent to this appeal. There are two issues raised by the appellant which must be dealt with here. The first is whether or not the trial court erred in failing to strike the Medaris counterclaim. The second issue is whether or not the “assignment” executed by Ladoniczki is enforceable against Trak as an obligor to Ladoniczki. The appellant, Trak, has raised several other points, but the view we take obviates a consideration of them.
STATEMENT OF THE FACTS
A. The Medaris-Ladoniczki relationship. On 8 January 1964 Medaris entered into an agreement with Joe Ladoniczki. The agreement was an informal memorandum outlining various plans for the exploitation of inventions developed by Joe La-doniczki or his corporation, Lunar Engineering, Inc. One of the provisions in the *191 agreement called for a loan of approximately $15,000.00 to Lunar Engineering. With respect to this loan, the contract said:
“Funds advanced under paragraphs (1) and (2) will be treated as loans to Lunar. Ladoniczki will sign appropriate promissory notes on behalf of Lunar. Ladoniczki will further sign a limited guarantee providing that any income received by him from the sale or disposal of his existing ideas and disclosed products is pledged to guarantee the payment of these notes. Notes will hear interest at the rate of 6% per annum computed monthly on the net amount of money advanced, and will be repayable to the Loan Fund at $1,000 per month beginning 1 August 1964, unless sooner converted in accordance with further provisions of this agreement.” (Emphasis added.)
The note executed by Lunar to Medaris contained a collateral agreement or assignment by Ladoniczki in the following language :
“FOR VALUE RECEIVED, the undersigned JOSEPH LADONICZKI hereby assigns as further security for the payment of the above note from LUNAR ENGINEERING, INC. to ME-DARIS, CRUGER & PATTERSON, INC. * * * all income and financial benefits which may be derived after this date from inventions and/or patentable ideas owned by me, and do consider this obligation as a lien against potential receipts for such inventions and idea, until the amounts receipted hereunder, together with interest therein, have been repaid in full.”
B. Ladoniczki-Trak relationship. By an agreement dated 19 April 1965 (after Ladoniczki had executed the note and assignment to Medaris) Ladoniczki and his wife executed a- contract under which La-doniczki sold three inventions to Trak Microwave Corporation. One of the inventions was the lamp. Under this agreement Trak was required to pay Ladoniczki $.47 for each lamp sold during a two year period. The trial court found — and there is no dispute as to this finding — that Trak manufactured under the agreement 14,619 lamps. Trak paid Ladoniczki $10,000.00 on the signing of the agreement as advance royalties on the lamp. None of this money was paid over by Ladoniczki to Medaris.
The first issue is raised by the appellant’s Point I which states:
“If the interpleader action was proper, Medaris' counterclaim should have been stricken, or if the interpleader action was improper the cause should have been dismissed without adjudicating any rights.”
The argument under Point I is predicated on the assumption that a counterclaim may not be filed in an interpleader action. We believe that this is an incorrect assumption under present day procedure. In 18 Fla.Jur., Interpleader § 15 page 384, the editor states: “* * * a cross-claim against the interpleading complaintant is inadmissible, and he should not ordinarily be made a party to a counterclaim by one of the defendants against the other.” (Emphasis added.) The only case citation which lends any support to this bald statement is Sammis v. L’Engle, 1883, 19 Fla. 800. There the court held that a cross-claim against the interpleading plaintiff was improper where “No rule of practice authorizes such a proceeding upon a bill of interpleader.” (Emphasis added.) The distinguishing factor with respect to Sammis v. L’Engle was that no rule of practice then authorized a counterclaim.
Historically the right to file an inter-pleader suit was regarded as an equitable remedy, Jax Ice & Cold Storage Co. v. South Fla. Farms, 1926, 91 Fla. 593, 109 So. 212, 218. In 1962 the remedy was codified in the Florida Rules of Civil Procedure as Rule 3.13. The interpleader rule has now become Rule 1.240, R.C.P. 30 F.S.A. The rule does away with many of the restrictions inposed upon the remedy *192 by case law and virtually eliminates the tenuous distinctions between a “strict bill of interpleader” and “an action in the nature of interpleader.”
 It is our opinion that when the remedy of interpleader was embodied in the Rules of Civil Procedure, the remedy became subject to all of the other appropriate Rules of Civil Procedure one of which is the rule providing for permissive counterclaims. Under Rule 1.170(b) a defendant may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party’s claim.
The Florida rule dealing with permissive counterclaims and also the Florida rule dealing with interpleader are virtually identical to analogous Federal Rules (Rule 13 and 22(1) ). There have been several federal decisions which hold that a counterclaim is not proper in an interpleader action because the plaintiff in the inter-pleader is not an “opposing party” and, therefore, cannot be made the subject of a permissive counterclaim. This view, however, places an unduly restrictive interpretation on the terms “opposing party” as used in the permissive counterclaim rule. The view has been rejected in other cases and is rejected by Professor Moore who says:
“The interpleader court may properly be employed as a forum to resolve not only the basic title contest between claimants, but also other disputes between the claimants, or between the claimant and the stakeholder. Thus, an allegation by one or more claimants that the stakeholder plaintiff is subject to an independent liability may be raised by a counterclaim under Rule 13 * * *. The stakeholder-plaintiff, having initiated the interpleader action and subjected itself thereby to the personal jurisdiction of the court, cannot complain if a claimant’s answer seeks to interpose a counterclaim for relief in excess of or different from the subject matter of the inter-pleader dispute.”
See Volume 3A, Moore’s Federal Practice, Section 22.15, p. 3129. The footnotes in this section of Moore contain the various federal cases representing the divergent views mentioned above.
In the case of Pan American Surety Company v. Cooke, Fla.App.1961, 130 So.2d 290, the Third District stated:q
“Having determined that interpleader did not lie, the court had no authority to adjudicate the rights of the parties. -» * *»
This statement is rather difficult to understand in the context of the opinion because virtually no facts are given with respect to the procedural background of the case. It does not appear, however, that a counterclaim was filed. Furthermore, the decision was rendered before the remedy of inter-pleader was codified in the Rules of Civil Procedure. The Pan American case was subsequently followed by the Third District in Aquilina v. Mangus, Fla.App.1969, 223 So.2d 786. The only other case on point since the remedy of interpleader was included in the Rules of Civil Procedure is Riverside Bank of Jacksonville v. Florida Dealers and Growers Bank, Fla.App.1963, 151 So.2d 834, 836. There the court was dealing with a suit in the nature of inter-pleader. The court held that a counterclaim was maintainable in the suit.
It seems to us that it is not in keeping with the spirit of the Rules of Civil Procedure to lay down a blanket interpretation absolutely denying permissive counterclaims in all interpleader actions. Rule 1.010 provides, “These rules shall be construed to secure the just, speedy and inexpensive determination of every action.” The trial court has ample authority to prevent a permissive counterclaim from embarrassing the interpleader action. Under Rule 1.250 the trial judge can sever a counterclaim and order that it be proceeded with separately. This can be resorted *193 to if a counterclaim jeopardizes the main action.
We conclude that the trial judge did not err in failing to dismiss or strike the counterclaim pursuant to Trak’s motion.
The next issue is whether or not the “assignment” executed by Ladoniczki is enforceable against Trak as an obligor to La-doniczki.
The assignment to Medaris was executed some months before the contract between Trak and Ladoniczki under which royalties accrued to Ladoniczki. Therefore, insofar as the assignment to Medaris relates to monies accruing under the Ladoniczki-Trak agreement, the assignment must be considered as an assignment of profits or income from contracts not in existence at the time of the assignment. There is considerable textbook law to the effect that this type of assignment is either invalid or imposes no duty upon third party obligors (in this case Trak). For example, see Restatement of Contracts § 154(2). See also 6 Am.Jur.2d, Assignments § 15 p. 200 wherein the editor states: “* * * Modern authorities generally recognize that an assignment of rights expected to arise under contracts not yet formed or executed is ineffective to transfer these prospective rights. * * * ”
There is no Florida case dealing precisely with the type of assignment which is presently before the court. In the case of Richardson v. Holman, 1948, 160 Fla. 65, 33 So.2d 641, the issue before the court was whether or not a possibility of reverter created by a reservation in a conveyance of land was assignable. The Florida Supreme Court held that it was and stated the policy of Florida as follows:
“In fine, the right of contract so rigidly canalized by the common law, has, by the constitution and statutes, been liberalized till at the present any citizen who is sui juris may enter into any contract that is not illegal, fraudulent, immoral or contrary to public policy. Under the common law a right of action, choses in action, future or contingent interests, possible and existing estates or interests, were not assignable, but all of these are now assignable by statute or in equity. * * *»
Based on Richardson v. Holman, we are of the opinion that the assignment from La-doniczki to Medaris is valid because it offends no statute, announced rule of public policy, or constitutional provision. The difficult problem is whether or not the assignment can be enforced against a third person not a party thereto, i.e., the debtor, Trak, after Trak has paid to the assignor (Ladoniczki) the funds allegedly assigned. The resolution of this issue depends upon the distinction between an assignment of a right to receive funds and a promise by the assignor to make an assignment of funds when they come into being at some unspecified time in the future under a contract not in existence at the time of the assignment. As Williston puts it, “* * * The distinction is to be drawn between a promise that the promissor will pay out of a particular fund when he collects it and an agreement that the promissee may collect a particular fund, or part of it, and keep it when he has collected.” 3 Willis-ton On Contracts, Third Edition, Section 428 p. 162. The Florida Supreme Court has said, “* * * The true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming as assignee * * McClure v. Century Estates, Inc., 1929, 96 Fla. 568, 120 So. 4, 10.
To apply the foregoing principles to the present case we might ask whether or not Trak was authorized by the assignment upon which Medaris relies to pay over to Medaris the money accruing to Ladoniczki. We answer this question in the negative for two reasons. First, the language of the assignment from Ladoniczki to Medar-is shows on its face that its purpose was to secure the debt of Lunar Engineering to Medaris. For ihis reason, Lunar and La-doniczki both had the power to extinguish *194 the assignment by paying off the debt. Hence Trak would not have been justified in paying Medaris on the basis of the assignment alone without some further authority from Ladoniczki. Secondly, the language of the assignment does not expressly empower Medaris to collect monies directly from any of Ladoniczki’s obligors —such as Trak.
For the foregoing reasons, the “assignment” in our judgment did not create in Medaris a right to collect from Trak money due Ladoniczki. The so-called assignment was in our opinion merely an agreement by Ladoniczki to pay over to Medaris monies which might come to him from exploitations of his inventions until the debt from Lunar to Medaris was paid. The agreement, therefore, was only enforceable against Ladoniczki. For this reason, the judgment in favor of the coun-terclaimant Medaris was in error.
That portion of the final judgment in favor of Medaris is vacated. On remand, the trial court is directed to enter judgment in favor of Trak and against Medaris on the latter’s counterclaim.
Remanded with instructions.
McCAIN, J., concurs.
WALDEN, J., dissents, with opinion.