Junior COLE, et al., Plaintiffs,

v.

**BARLAR ENTERPRISES, INC., Defendant,**

Stottlemyer and Shoemaker Lumber Co., et al., Third Party Defendants.

Barlar Enterprises, Inc., Defendant/Third Party Plaintiff,

v.

Jeffrey R. Davis, et al., Third Party Defendants, Supplementary.

No. 96–2634–Civ–T–24(B).

United States District Court, M.D. Florida, Tampa Division.

Jan. 15, 1999.

---

Joel Otto Lederer, Law Office of Joel O. Lederer, Port Charlotte, FL, for plaintiffs.

David Eric Gurley, Anthony S. Cabrera, Norton, Moran, Hammersley, Dunlap, Gurley & Lopez, P.A., Sarasota, FL, for defendants.

Adelaide G. Few, U.S. Attorney's Office, Tampa, FL, for U.S., third–party defendant.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on the following motions, filed in accordance with the Court's August 7, 1998 Order: (1) Motion by Third–Party Defendant United States of America for Summary Judgment (Doc. Nos. 41 & 42, filed September 23, 1998) and (2) Intervenor Plaintiff's, American States Insurance Company, Supplemental Brief Establishing Priority of Rights to Interpled Funds and Third Party Defendants', Jeffery R. Davis and Joanne Davis, Renewed Motion for Summary Judgment (Doc. No. 43, filed September 23, 1998). In addition, Defendant/Third Party Plaintiff Barlar Enterprises, Inc. filed a Motion for an Order Directing Satisfaction of Judgment on October 2, 1998 (Doc. No. 44). None of the parties responded to the other motions filed.

### I. Background

This is an interpleader action initiated to decide the rights to approximately $30,000 in attorneys fees and costs. Sometime prior to September 1996,[1] Jeff and Joanne Davis were sued in state court by Barlar Enterprises, Inc. Barlar, a general contractor, was sued for defective construction, and sued, in turn, its subcontractors, two of whom were Jeff and Joanne Davis. Pursuant to an American States insurance policy covering the Davises, American States provided counsel and related costs for the Davises' defense. Upon a finding of non-liability on the part of the Davises, the American States attorneys moved for (and were granted) attorneys' fees and costs. Thus, a Supplemental Final Judgment Nunc Pro Tunc was entered on August 1, 1996, awarding $30,814.50 in attorneys fees and costs to the Davises. See Doc. No. 2 and Exh. B thereto.

Shortly thereafter, on October 31, 1996, the Internal Revenue Service sent a Notice of Levy to Barlar, stating that Jeffery Davis owed the Government in excess of $150,000 in delinquent taxes and demanding that Barlar release the approximately $30,000 it owed

---

1. It is not clear from the file when the underlying action was filed or resolved. Barlar's complaint for interpleader (see Doc. No. 2) states that the Supplemental Final Judgment Nunc Pro Tunc was entered by the state court on August 1, 1996 and that document (see Exh. B to Doc. No. 2) states that a final judgment was entered on August 28, 1995.

Davis to the Government. Barlar, in turn, filed a Complaint for Interpleader (Doc. No. 2) in state court. Barlar's complaint named the Davises and the IRS as defendants, but neglected to name American States or its attorneys. Shortly thereafter, on December 24, 1996 (Doc. No. 1), the Government removed the case to this Court based on 28 U.S.C. § 2410.

On February 10, 1998, this Court entered an Order (Doc. No. 32), finding that American States had waited too long to assert its wrongful levy claim under 26 U.S.C. § 7426(a)(1), and holding that because of its dilatoriness the Court was without subject matter jurisdiction to hear American States' claim to the interpled funds.

As a result of that order, a motion for reconsideration was filed. It was filed on the grounds that the 1996 tax levy at issue (issued for tax liability assessed for the tax years 1991 and 1992) in the Court's prior Order had been substantially satisfied by the Davises, with the exception of $6,490.85; although the Government was attempting to collect the balance of the interpled funds to satisfy deficiencies for the 1993 tax year, these deficiencies were not part of the 1996 tax levy at issue in the Court's February 1998 Order.

Upon review of the motion for reconsideration the Court reached the following conclusions in an Order dated August 3, 1998:

1. The Court agreed with American States that the substantial satisfaction of the IRS' 1996 tax levy, with the exception of $6,490.85, was a fact commending reconsideration, and that once the 1996 levy was satisfied, the Title 26 U.S.C. Section 6532 "clock" would not begin ticking on the remaining funds until another federal levy for tax deficiencies for 1993 was made.

2. The Court was unclear as to whether a new levy for taxes for the 1993 tax year existed, and if it did, whether this new interest would have priority over that of American States.

3. The Court accordingly modified its prior order so as to release only $6,490.85 of the interpled funds to the Government to satisfy the 1996 tax levy, to permit the intervention of American States, and to order the Government and American States to file supplemental briefs regarding each party's right to the balance of the interpled funds.

4. The Court instructed the parties to address the following issues in the supplemental briefs: (i) when (if at all) the IRS asserted a claim based on the Davises' 1993 tax liability, (ii) whether § 6532 barred American States from the assertion of wrongful levy, (iii) the nature of American States' interest in the funds, and (iv) American States' position relative to the IRS, citing to *In re Haas*, 31 F.3d 1081 (11th Cir.1994) (priority of unperfected lien) and *Capuano v. United States*, 955 F.2d 1427 (11th Cir.1992) (superpriority due attorneys fees).

## II. Discussion

### A. Motions for Summary Judgment

#### 1. Remaining Interpled Funds

The Court will order its analysis of the issues as they were posed to the parties in its request for supplemental briefs. First, both parties agree that with respect to deficiencies asserted for the 1993 tax year, a lien was assessed by the Government on August 4, 1997 and the Notice of a federal tax lien was recorded with the Clerk of Circuit Court of Charlotte County, Florida on February 3, 1998. *See* Doc. No. 142, Government's Exh. 7. In addition, the parties also agree that because the remainder of the interpled funds are not subject to the 1996 federal tax levy, Title 26 U.S.C. Section 6532 no longer acts as a potential bar to recovery for American States.

The dispute between the parties exists regarding issues three and four raised by the Court. These issues are interrelated as the nature of American States' interest in the interpled funds affects which party has a superior interest. The IRS contends that the issue is not one of priority, but rather whether the federal tax lien ever attached to the interpled funds. Stated differently, the issue is whether (a) the Davises had an interest in the funds such that the federal tax lien could and should attach, or (b) the funds were assigned to American States at the time

the insurance policy was issued and as such were never the property of the Davises for attachment. American States agrees to framing the issue in this fashion, though of course it disagrees to the ultimate outcome.

■ The extent to which a taxpayer has "property" or "rights to property" to which a federal tax lien can attach is a state law issue. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). In this case, the insurance policy provision which has sparked the instant discussion is the following:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. *See* Doc. 43, Exh. A, Section IV. 8.

■ The Government argues that the funds from the judgment were never effectively assigned to American States on two separate grounds. First, the Government contends that the insurance policy provision is ambiguous. As binding precedent mandates that ambiguities are construed against the drafter of the contract, the assignment is thus ineffective. The basis for this assertion is that sentences one and three are inconsistent. Upon reviewing of the provision, however, the Court finds that no such ambiguity exists. The first sentence is a blanket requirement that any right to recovery of attorneys' fees and costs incurred by American States is transferred to it. The third sentence explains how such a recovery will be accomplished. The Court finds no ambiguity or inconsistency in this language, and accordingly denies the Government's request that the assignment be held ineffective on this ground.

In the alternative to the ambiguity argument, the Government contends that under Florida law, the insurance policy provision does not rise to the level of an assignment, and as such American States has no vested interest in the funds. In support of this assertion, the Government cites to *Trak Microwave Corp. v. Medaris Management, Inc.,* 236 So.2d 189 (Fla.App. 4th Dist.1970) for the proposition that the language of an assignment must expressly empower the assignee to collect monies directly from any of the assignor's obligors. In addition, the Government cites to the following commentary quoted in *Trak* from **Williston on Contracts:** "The distinction is to be drawn between a promise that the promisor will pay out of a particular fund when he collects it and an agreement that the promisee may collect a particular fund, or part of it, and keep it when he has collected." *Id.* at 193 (quoting 3 **Williston on Contracts** § 428 p. 162 (3d ed.1960)).

■ Upon a careful review of *Trak,* the provisions in Williston on Contracts to which the Government cites, and other pertinent case law, the Court is not persuaded that the assignment was ineffective. First, the Court notes that in the same section of **Williston on Contracts,** the author also states that "[t]he ultimate criterion is the intention of the assignor to give and the assignee to receive present ownership of the claim." 3 **Williston on Contracts** § 428 p. 162 (3d ed.1960) (citation omitted). The Court finds that in this case that there was an intent to transfer ownership to American States under the insurance provision with the statement that "those rights *are* transferred to us."

In addition, the Court notes that after its reference to **Williston on Contracts,** the *Trak* Court cited to the Florida Supreme Court for the proposition that "[t]he true test of an equitable assignment is whether the debtor *would be justified* in paying the debt to the person claiming as assignee." *Trak Microwave,* 236 So.2d at 193 (quoting *McClure v. Century Estates, Inc.,* 96 Fla. 568, 120 So. 4, 10 (1928) (emphasis added)). The Court finds that because American States provided the legal services recovered in the first place, American States would be justified in requiring the losing party to any litigation pay for those costs.

The Court also finds *Randall v. H. Nakashima & Co., Ltd.,* 542 F.2d 270 (5th Cir. 1976) instructive on this issue. In *Randall,* the Fifth Circuit held that where a taxpayer assigned its rights in a telephone system to a third party in order to remove an encum-

brance on the shares of stock, a tax lien previously filed against the taxpayer attached to the system. *See id.* at 271. In its discussion, the Court stated that "[t]he pertinent question in this case is, 'was the interest of the taxpayer in the PBX system bargainable, was it transferable, did it have value?'" *See id.* at 278. In *Randall*, the telephone line clearly did, and as such was a property right before it was assigned to the third party. In this case, however, the Davises never possessed such a bargainable or transferable right. It had no value apart from that potentially given by American States through a successful defense.

The *Randall* Court also made the following statement regarding the policy underlying its decision:

> Because the taxpayer's contract right was a valuable and transferable interest, it would be scholastic indeed to deny that it was a property interest to which the federal tax lien might attach. The statutory purpose of assuring collection strongly suggestions that such interest should be subject to the lien to discourage transfers by the taxpayer aimed at defeating the rights of the government. *Id.* at 273.

The Court expressed concern that a taxpayer might make an anticipatory transfer or assignment just prior to the maturing of a contract right in order to avoid a tax lien. This is a valid concern, which this Court also shares. Such a problem, however, is not at issue in the case at bar. When the insurance contract was signed in 1992, no federal tax lien existed, and certainly no law suit arising under the policy for which American States would have to provide legal defense existed. As such, there was no attempt to avoid a tax deficiency.

In concluding this discussion, the Court notes that in the area of assignments, it is a constant concern that income tax be assessed to the person who earns the income, regardless of whether this income has been assigned.[2] The Court finds this rule of assistance in the discussion by way of analogy.

In this case, American States earned the right to collect attorneys' fees and costs from the underlying litigation against the Davises by providing successful legal representation, and by pursuing recovery of their costs. To find that the Davises ever "earned" this money or had a right to the money such that a tax lien could attach would not reflect the reality of the situation. The Court finds therefore that under the insurance provision, the interpled money was always the property of American States, and as a result, the federal tax lien against the Davises did not attach. Summary judgment is granted for Intervenor American States on this issue.

### 2. Right to $3,478.70 Already Released to the Government

When the Court issued its Order in response to the motion for reconsideration, it ordered that $6,490.85 of the interpled funds be released to the Government to satisfy the 1996 tax levy for tax deficiencies remaining for the 1991 and 1992 tax years. American States now asserts that the Government should be obligated to pay $3,478.70 to it because only a $3,012.09 deficiency remained under the 1996 tax levy at the date of the Court's Order, rather than the $6,490.85 originally asserted by the Government. In its brief, the Government states that an overpayment for 1991 was credited to the 1992 deficiencies on July 13, 1998, such that the deficiency was not $6,490.85, but $3,012.09. *See* Doc. No. 42, fn. 1. Because the Government confirms the assertions made by American States, the Court finds that the deficiency under the 1996 tax lien was $3,012.09. As such, the Court finds that the Government should pay American States $3,478.70 of the interpled funds released to it.

### B. Motion for Order Directing Satisfaction of Judgment

Barlar Enterprises seeks the entry of an order directing the Davises to cancel the judgment lien issued against its real property as it has paid over the money due under the

---

**2.** *See Lucas v. Earl,* 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930) ("There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could

not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary from vesting even for a second in the man who earned it.")

August 1, 1996 Judgment Nunc Pro Tunc entered against it. Barlar contends that since it has deposited the funds at issue into the Court registry, it has repeatedly requested that the judgment lien be canceled. To date this has not happened, apparently because the attorney for the Davises and American States refused to do so until the interpleader was resolved. As the Court has resolved the matter, it appears that this issue is rendered moot. However, to the extent that the Davises and American States have not released the judgment lien, they are ordered to do so now.

## III. Conclusion

ACCORDINGLY, it is **ORDERED** and **ADJUDGED** that:

1. The Motion by Third–Party Defendant United States of America for Summary Judgment and Supporting Memorandum of Law (Doc. Nos. 41 & 42, filed September 23, 1998) is **DENIED.**

2. Intervenor Plaintiff's, American States Insurance Company, Supplemental Brief Establishing Priority of Rights to Interpled Funds and Third Party Defendants', Jeffery R. Davis and Joanne Davis, Renewed Motion for Summary Judgment (Doc. No. 43, filed September 23, 1998) is **GRANTED.**

    (a) The Clerk of the Court is directed to **RELEASE** all of the remaining interpled funds to David E. Gurley, to be mailed to the following address:

    David E. Gurley

    Norton, Gurley, Hammersley & Lopez, P.A.

    1819 Main Street, Suite 610

    Sarasota, Florida 34236

    (b) The Government is ordered to refund **$3,478.70** to American States from the previously released interpled funds.

3. Defendant/Third Party Plaintiff Barlar Enterprises, Inc.'s Motion for an Order Directing Satisfaction of Judgment (Doc.

No. 44, filed October 2, 1998) is **GRANTED.**

**DONE AND ORDERED.**